UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER ZEITO,                                    **DECISION AND ORDER**

                        Petitioner,                   No. 03-CV-6663

            -vs-

R.A. GIRDICH, Superintendent,

                        Respondent.

_____

## INTRODUCTION

Petitioner, Christopher Zeito ("Zeito"), filed this *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on one count of second degree

murder in Monroe County Court. The parties have consented to disposition of this matter by the

undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the morning of August 4, 1996, the victim, Michael Lanza ("Lanza"), picked up John

Sutton ("Sutton") in his van on their way to work. Lanza's utility van was registered in the name

of his former girlfriend, Jeannine Bianchi ("Bianchi"), but he made the installment and insurance

payments on it. On the way back from work that evening, Lanza and Sutton stopped at a mini-

mart on Lyell Avenue to buy gasoline. Before they could leave, a red Honda Civic pulled up

nose-to-nose with Lanza's van and blocked him from leaving. Zeito, Bianchi's current boyfriend,

was driving the Civic. Bianchi's brother, Gary Freece ("Freece"), was in the passenger seat.

Freece approached Lanza, who was sitting shirtless in the driver's seat of the van, and

told him to get out because Bianchi wanted the van back. Lanza refused, telling Freece, "If she

-1-

wants the van, she can come and get it." At that point, Zeito jumped out of the passenger seat of the Civic with an eleven-inch steak knife, approached Lanza, and put the knife to his throat. Lanza pulled away toward the passenger's side of the van and Sutton boosted him out of the window and onto the roof of the van. The next thing Sutton saw was Lanza on his back being straddled by Zeito, who was swinging the knife as Lanza tried to ward off the blows. As Sutton went inside the mini-mart to call the police, he heard Lanza begging Freece for help. Freece answered that Lanza deserved what he was going to get. By the time Sutton came back out, Lanza was attempting to crawl onto a bus. Sutton asked Lanza if he was alright, but Lanza could only cough.

Zeito and Freece departed, with Zeito driving his car and Freece in the van. Freece told Sutton to warn Lanza that, the next time, it would be Freece doing the attacking. Freece that Lanza would not be able to run away: "He'll still be lying there."

Eyewitness Joan Phillip ("Phillips"), who was waiting for that bus, saw "an attack on some guy" involving a knife. She first saw the shirtless victim on top of the van; he then appeared to jump off, landing on his back. Phillips said he was unarmed but that the man standing over him had a knife. She testified that she "knew it was going to be serious, that's all." After a few minutes, Phillips saw Lanza get up and stagger to the bus stop and crawl up the stairwell of the bus as the door opened. Seconds after Lanza collapsed, he appeared to go into shock and then he died.

The medical examiner confirmed that the cause of death was a puncture wound to the chest which pierced the heart. He described the wound as a "sharp injury" with a "narrow width

and a rather long, relatively long depth" which "strongly suggest[ed] a knife[.]" T.400.[1] There

also were smaller, superficial "defense-type" wounds to the victim's hands, also apparently

caused by a knife. T.402. The toxicology report indicated the presence of cocaine in Lanza's

blood supply, but it had nothing to do with the cause of death. T.407-09.

The defense theory of the case was justification–that Zeito was attached by Lanza, who

allegedly was in a drug-crazed frenzy. According to defense witnesses Bianchi and Freece, Zeito

was attempting to secure possession of his fiancee's van from Lanza, who "couldn't stay out of

trouble" and who was a "geeker" (*i.e.*, a person who constantly did cocaine). Freece testified that

he approached the van and attempted to grab Lanza, who "slipped away" and then flew through

passenger's side window "like Superman," "using his feet to lunge at [Zeito]." Freece testified

that, during the struggle, Zeito was on his back and Lanza was on top, threatening to kill Zeito.

Eventually, according to Freece, Lanza then took off running across the railroad tracks.

On cross-examination, Freece admitted that he had been convicted of falsely reporting an

incident; he apparently lied to the police to shield a friend of his who had been involved in a

fight, blaming the other person for starting it. Freece averred that he was telling the truth about

the incident with Lanza, however.

The defense also called Jeanne Beno ("Beno"), the chief toxicologist for the Monroe

County Medical Examiner, who opined that Lanza "probably had been under the influence of

cocaine for some hours" prior to his death and that someone who is on a cocaine binge becomes

"more likely" to exhibit a form of paranoia. However, Beno could not determine whether Lanza

was a habitual user nor how he, or anyone else with that amount of cocaine in his system, would

---

[1] Citations to "T.__" refer to the trial transcript.

have actually behaved.

Zeito did not testify in his behalf, a decision which he now attributes to deficient performance by his defense counsel. The jury found Zeito guilty of second degree (intentional) murder as charged in the indictment. After finding that Zeito was a "vicious, violent and dangerous person," the trial court imposed a sentence of twenty-five years to life in prison.

Zeito's conviction was affirmed on direct appeal. *People v. Zeito*, 302 A.D.2d 923, 753 N.Y.S.2d 914 (App. Div. 4th Dept. 2003), *lv. denied*, 99 N.Y.2d 634, 790 N.E.2d 290, 760 N.Y.S.2d 116 (N.Y. 2003). Represented by counsel, Zeito collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") 440.10, alleging that trial counsel was ineffective. This application was denied by the trial court and leave to appeal was denied by the Appellate Division.

Zeito now asserts the following grounds for habeas relief: (1) the trial court erred in failing to suppress the statement that he made to the police after receiving *Miranda* warnings because that statement was tainted by his earlier statement to the police that preceded the *Miranda* warnings; (2) the trial court interfered with defense counsel's questioning of a witness; (3) trial counsel was ineffective in failing to notify petitioner of his right to testify; and (4) trial counsel was ineffective in failing to call petitioner as a witness. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Procedural Default

Respondent contends that the "adequate and independent state ground" doctrine bars habeas review of the following two claims: (1) the trial court erred in failing to suppress the

statement that Zeito made to the police after receiving *Miranda* warnings because that statement was tainted by his earlier statement to the police that preceded the *Miranda* warnings and (2) the trial court interfered unnecessarily during the questioning of certain witnesses. On direct appeal, the Appellate Division held that Zeito failed to object contemporaneously to these alleged errors and therefore failed preserve both claims for review. *People v. Zeito*, 302 A.D.2d at 923 (citing N.Y. Crim. Proc. Law § 470.05(2)). As for the *Miranda* claim, the court found that Zeito failed to raise that contention before the suppression court. With respect to the claim regarding the trial court's interference, the appellate court also held that record did "not support defendant's contention that the court took on either the function or appearance of an advocate."*Id.* (internal quotation marks and citations omitted). As respondent correctly notes, the state court's reliance on a state procedural bar rule as a basis for dismissing the claim constitutes an adequate and independent state ground which precludes federal habeas review unless Zeito can show cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will occur should this Court fail to consider the claims.

New York's contemporaneous objection rule requires that in order to preserve an issue for appellate review in the New York state courts, the defendant must object to the alleged error at trial, at such time when the trial court has an opportunity to repair the defect. *See* N.Y. Crim. Proc. Law § 470.05(2). The New York Court of Appeals has consistently held that a failure to object at a time when the trial court had an opportunity to correct the alleged error does not preserve any question of law for review. *See People v. Patterson*, 39 N.Y.2d 288, 383 N.Y.S.2d 573 (N.Y. 1976) (citing N.Y. Crim. Proc. Law § 470.05(2)). The court in *Patterson* explained that "[s]trict adherence to the requirement that complaint be made in time to permit a correction

serves a legitimate State purpose." *Id.* (citing *Henry v. Mississippi*, 379 U.S. 443, 447 (1965)).

Where, as here, "'the state court explicitly invokes a state procedural bar rule as a separate basis for decision,'" federal habeas review is precluded unless the petitioner can show cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur if the federal court does not consider the defaulted claim. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) and citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). In the present case, the state court's reliance on the contemporaneous objection rule in denying the two claims constitutes an adequate and independent basis so as to preclude federal habeas review of them. *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted).

Zeito has failed to show cause or prejudice, and he has not adduced new evidence tending to show that he is actually innocent of the charges against him. *See*, *e.g.*, *Harris*, 489 U.S. at 262. On this record, there is no basis for overlooking the clear procedural default. Accordingly, federal habeas review of these two claims is precluded.

## Merits of the Petition

**Claims Three and Four: Ineffective Assistance of Trial Counsel**

Zeito contends that trial counsel was ineffective in failing to (1) notify him of his right to testify and (2) call him as a witness at trial. When Zeito raised these claims in his C.P.L. § 440.10 application, the motion court held as follows:

> On the papers before this Court, it is clear that the trial Judge advised the defendant at some time prior to his trial, "Whether or not to testify at the trial is

your decision alone. You seek the advice of your attorney, of course, but the final decision is your decision. Do you understand?" The defendant admits that he responded, "I do, sir." It would seem then that the argument that his trial counsel failed to give him similar advice at the time of trial is without merit and, therefore, the application on this basis is denied[.]

October 5, 2000 County Court Order at 2, Respondent's Appendix at 126. As for Zeito's claim

that his failure to testify at trial was "ineffective assistance of counsel *per se*" since the theory of

the defense was justification, the motion court held that the argument had to be rejected since it

was, "in effect, an attack on a trial strategy which had a basis in the record[.]" *Id.*

In order to prevail on a claim of ineffective assistance of counsel within the framework

established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas

petitioner must satisfy a two-part test. First, the petitioner must demonstrate that counsel's

performance was so deficient that counsel was not functioning as "counsel" within the meaning

of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, the petitioner must show

that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second,

the petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To

establish the "prejudice" prong of the *Strickland* test, the petitioner must show that a "reasonable

probability" exists that, but for counsel's error, the outcome of the trial would have been

different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if a petitioner is

unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason

for a court deciding an ineffective assistance claim to . . . address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697.

When reviewing trial counsel's performance, a habeas corpus court must be "highly

deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." *Id.* at 689. The court must not rely upon hindsight and second-guess counsel's unsuccessful trial strategy. *Id.* Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 689-90. The Second Circuit has held that "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy, *United States v. Matalon*, 445 F.2d 1215, 1219 (2d Cir.), *cert. denied*, 404 U.S. 853 (1971), which courts will practically never second-guess." *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974).

With respect to Zeito's claim that trial counsel failed to notify him of his right to testify, it is apparent that Zeito was not prejudiced because he was clearly informed by the trial judge, prior to trial, of his right to testify and the fact that it was his decision to make. Thus, even if counsel did fail to give him similar advice regarding the right to testify, Zeito suffered no constitutional prejudice. As Zeito cannot prove the "prejudice" prong of *Strickland*, his claim must fail. *Strickland*, 466 U.S. at 697.

Turning to Zeito's claim that trial counsel acted unreasonably in failing to call him as a witness, I note that defense counsel certainly had a strategic reason for not calling his client. Zeito had a fairly extensive criminal record which included several assaults (one of which was with a knife). Also, Zeito was the new boyfriend of the victim's ex-girlfriend, Bianchi, who happened to have a daughter with the victim. The testimony concerning Zeito's criminal record in particular would obviously have a negative effect, thereby providing counsel with a valid reason for not calling his client. As the Second Circuit has observed, "[a] court 'will practically never second-guess' an attorney's decision to present or withhold a witness." *Badalamenti v.*

*United States*, 201 F.3d 430 (2d Cir. 1999) (unpublished opinion) (quoting *Walker v. Henderson*, 492 F.2d at 1314). Calling a criminal defendant to testify in his behalf is one of those strategic decisions by defense counsel that a habeas court generally may not, with hindsight, second guess. Zeito's failure to testify was reasonable, given the facts presented here, and it cannot be attributed to the ineffective assistance of counsel. Furthermore, even if Zeito had testified, there is no reasonable probability that the outcome of the trial would have been different, given the extremely compelling testimony by the disinterested witnesses who observed the attack. Thus, Zeito was not prejudiced by his failure to testify at trial. This claim also must be denied.

## CONCLUSION

For the reasons stated above, Christopher Zeito's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Zeito has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253. I further certify that pursuant to 28 U.S.C. § 1915(a)(3), any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        May 23, 2006
              Rochester, New York.